IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Michael Denson,

    Plaintiff,

v.

The Anthem Companies, Inc.,
d/b/a Anthem, Inc. and
Franklin George,

    Defendants.

Civil Action No.

Jury Trial Demanded

_____

# COMPLAINT

Plaintiff Michael Denson ("Denson"), files this lawsuit against The Anthem Companies, Inc. d/b/a Anthem, Inc. ("Anthem"), and Franklin George ("George") (hereinafter collectively "Defendants").

## Jurisdiction and Venue

1. This is an action for race discrimination, national origin discrimination, and retaliation brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) through 2000e-17 ("Title VII"), as amended, including the Civil Rights Act of 1991 and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff seeks, *inter alia*, declaratory and injunctive relief, lost pay and benefits,

compensatory and punitive damages, other consequential damages and attorneys' fees and costs.

2.  The claims herein present a federal question, and this Court has jurisdiction over this case pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. § 1981 ("Section 1981"), and 28 U.S.C. §§ 1331 and 1343 (3) and (4).

3.  Venue properly lies in the United States District Court for the Northern District of Georgia, Atlanta, Division, pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendants are conducting business in this judicial district and the unlawful practices alleged below were committed in this judicial district.

4.  Plaintiff Michael Denson is an adult African-American male and currently a resident of the Northern District of Georgia. Plaintiff submits to the jurisdiction of this Court.

5.  At all times relevant to this matter, Denson and Anthem had a contractual relationship as that term is used in Section 1981, and the terms and conditions of that relationship are subject to and governed by the provisions of Section 1981.

6.  At all times relevant to this matter, Denson and Defendant George had a contractual relationship as that term is used in Section 1981, and the terms and conditions of that relationship are subject to and governed by the provisions of Section 1981.

7. At all times relevant to this matter, Plaintiff was an "employee" of Anthem as defined at 42 U.S.C. §2000e(f).

8. Plaintiff was employed by Defendant Anthem to perform services within the Northern District of the State of Georgia.

9. Plaintiff filed a timely charge of discrimination against Defendant Anthem with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue (NRTS) from the EEOC within ninety days of filing the Complaint in this matter.

10. Defendant Anthem is now, and at all times relevant to this action has been, engaged in interstate commerce as one of the nation's largest providers of health insurance benefits with over 50,000 employees in locations across the country. The Company offers a broad portfolio of healthcare plans and related services, such as life insurance, disability insurance, dental, vision, behavioral health benefit services, long-term care insurance and flexible spending accounts.

11. The Anthem Companies, Inc. is a wholly-owned subsidiary of Anthem, Inc.

12. Defendant George is an adult Caucasian male who resides in the Northern District of Georgia. Now, and at all times relevant to this action, Defendant George has been the Staff Vice President (VP) of Accounting and Reporting in the Financial Accounting & Reporting Department (hereinafter "FAR

Department") for Defendant Anthem in its Atlanta office and exercised significant control over the terms and conditions of Plaintiff's employment.

13. As a manager in the FAR Department, Defendant George has supervisory authority over the positions and personnel reporting to him both directly and indirectly. Defendant George is a primary decision maker with regard to discipline, promotions, job assignments and terminations for all personnel under his supervision, including Plaintiff Denson, and is sued both individually and in his official capacities.

14. Defendants are subject to the personal jurisdiction of this Court.

15. Defendant Anthem may be served with process by delivering a copy of the Complaint and summons to its registered agent, CT Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

16. Defendant George may be personally served with process by delivering a copy of the Complaint and summons to him at the Anthem office at 3350 Peachtree Road, Atlanta, Georgia 30326.

<u>Factual Allegations</u>

17. On October 31, 2005, Plaintiff began his employment at Anthem as a Financial Analysis Manager in the Finance, Planning & Analysis Department (hereinafter "FPA Department").

18. Plaintiff has a Bachelor's degree in Business Administration from the State University of West Georgia, and a Master's of Business Administration ("MBA") degree from DeVry University's Keller Graduate School of Management.

19. Plaintiff is a Certified Public Accountant ("CPA") and a Fellow of the Georgia Society of CPAs, and has a Six Sigma Greenbelt certification.

20. Plaintiff has over twenty years of accounting and finance experience, extensive supervisory experience, and project management experience.

21. Plaintiff progressed up through the ranks of Anthem, handling positions with increasing levels of supervisory responsibility and complexity until May 2007, when he was promoted to the position of Financial Accounting & Reporting Manager ("FAR Manager") in FAR Department.

22. As FAR Manager, Plaintiff had various duties including directing the work of several employees, reviewing, analyzing and approving complex accounting and financial analysis transactions, and leading committees to implement new and modify existing accounting processes and procedures. Although Plaintiff had supervisory duties and various accounting and financial duties, he had no authority to hire, terminate or discipline employees.

23. Plaintiff worked on high visibility projects, including serving as a subject matter expert (hereinafter "SME") for two years on the FAR Training and

Onboarding Strategic Project. As a SME, Plaintiff interacted with managers and employees throughout the entire FAR Department.

24. At all times prior to his termination, Plaintiff performed his duties well and to the satisfaction of his superiors.

25. In fact, during his more than 12 years of employment with Anthem, Plaintiff won a number of awards for his job performance and has been recognized by Anthem for his contributions and idea submissions.

26. During the entirety of his employment with Anthem, Plaintiff never received a written disciplinary action nor was he ever placed on a Performance Improvement Plan ("PIP").

27. Nevertheless, Anthem would not promote Plaintiff beyond the level of FAR Manager into a position that carried a pay grade designation of E14 or higher. Between 2012 and February 2017, Plaintiff applied for and was rejected for over seventeen (17) open positions within the FAR and FPA Departments as well as other Corporate Accounting Departments.

28. Defendant Anthem awarded every job vacancy for which Plaintiff applied since 2012, to a Caucasian candidate.

29. Since 2007, there have been no African Americans promoted to positions at the E-14 or M-14 and above pay grade level within the FPA Department.

30. During Plaintiff's employment, there were no African-American employees designated at the E-14 or M-14 level or above within the entire FPA Department.

31. Within the FAR and FPA Departments, Plaintiff observed that there was a pattern and practice of discrimination against African-American employees in managerial positions on account of their race and national origin, as well as retaliation for complaints of discrimination.

32. Plaintiff voiced his concern about discrimination within the FAR and FPA Departments to Defendant George and Anthem's Human Resources Department. Plaintiff also expressed concern that there was a pattern of retaliation by Anthem against individuals that raised complaints of discrimination.

33. Anthem policy states that the company will fill open positions with the best qualified people available and post open positions either internally, externally or both.

34. In both the FAR and FPA Departments, Caucasian employees were promoted in contravention of Anthem policy regarding posting open positions, including into positions up to pay grade Level 14 such as the positions for which Plaintiff applied, for the purpose of denying African Americans the opportunity to apply and compete for the positions.

35. In March of 2015, Anthem advertised for job vacancy #101464, Manager, Senior Financial Accounting/Reporting/Analysis in the FAR Department, a job

that required candidates, among other things, to have 8 to 10 years of progressive experience in a Controller or senior financial management position with a medium or large insurance company, which experience Plaintiff had. Plaintiff applied for this position.

36.     In March 2015, Plaintiff also applied for job vacancy #100425 a Financial Account Executive position ("job vacancy #100425") and job vacancy #101612 as Financial Planning & Analysis Director ( "job vacancy #101612") in the FPA Department.

37.     On April 3, 2015, Plaintiff was interviewed for job vacancy #101464. During this interview, Plaintiff told Human Resources Manager Maria McGee that he was concerned that the selection process was tainted and Defendant George would retaliate against him for voicing his past complaints about race discrimination and retaliation against African-Americans.

38.     On April 15, 2015, Plaintiff again expressed to Ms. McGee his concerns that the interview process was not fair and advised Ms. McGee of past retaliatory acts by Defendant George and Michael Illori (Nigerian male), Plaintiff's supervisor.  Once again, Plaintiff discussed his concerns about African Americans not being promoted to high level management positions within the organization.

39. As a result of Plaintiff's complaints of discrimination, Defendant George directed his subordinates to stop speaking to Plaintiff in or about April 2015, most especially after a discussion between Plaintiff and George about George promoting Michael Brock, a white male, and then again after Plaintiff filed an EEOC charge shortly thereafter.

40. After Plaintiff complained to Mr. Illori about African-American employees not being promoted to managerial positions within Anthem, Mr. Illori pointedly remarked to Plaintiff that "some people won't get promoted no matter how hard they work."

41. Plaintiff was rejected for all three open positions (#101464, #100425 & #101612) for which he had applied. All three positions were awarded to less qualified Caucasians.

42. Job vacancy #101464 was awarded to Michael Brock, a Caucasian male, who did not meet the minimum qualifications posted for the position in that he did not have 8 to 10 years of progressive experience in a Controller or senior financial management position with a medium to large insurance company.

43. Mr. Brock's selection to fill job vacancy #101464 made him the supervisor over Plaintiff, even though Plaintiff had more tenure at the company, more tenure within the FAR Department, and more extensive managerial and

accounting experience. Defendants knew of Plaintiff's superior qualifications for the job.

44. Ms. McGee sent an email to Defendant George on April 7, 2015, stating that she believed Plaintiff wished to be a "spokesperson," referencing Plaintiff's role in opposing race and national origin discrimination and retaliation, and that Mr. Brock will be more "malleable" than Plaintiff.

45. When Plaintiff asked Defendant George why Mr. Brock was selected for the position instead of him, Defendant George stated because "the position requires a lot of visibility to management."

46. In response to Plaintiff's statement that he had held positions with higher visibility than Mr. Brock within Anthem, had more seniority in the FAR Department, and had more accounting and financial management experience, Defendant George angrily told Plaintiff that he had been denied the position because he "had a bad attitude" and, "have been running around talking about certain people don't get promoted." Defendant George also told Plaintiff that it did not matter if Michael Brock had less tenure with Anthem or less experience than Plaintiff.

47. In other words, Defendant George admitted that Plaintiff's complaints about African-American employees not having equal opportunity for promotions was the cause of Plaintiff not being promoted.

48. In May 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was being denied promotions on account of his race. In June 2015, Plaintiff amended his EEOC charge to include retaliation.

49. On May 12, 2016, the EEOC issued Plaintiff a Notice of Right to Sue regarding Plaintiff's charges of discrimination. Although Plaintiff chose not to file suit at that time, he did continue to apply for managerial positions for which he was well qualified.

50. In January 2017, Plaintiff completed a 7 month Front-Line Leadership Fundamentals Program (hereinafter "Leadership program") and was one of the three top contributors in the program.

51. The selection criteria for entry into the Leadership program requires candidates to "be a consistently solid performer." According to Anthem policy, the Leadership program is designed to develop "high performing front-line leaders," enhance their career potential, and allow for development of "the fundamental skills needed for an increased leadership presence."

52. On January 30, 2017, Plaintiff had two interviews for a Finance Director position at Anthem. Plaintiff received positive feedback from the interviewers.

53. On February 21, 2017, hiring manager and Regional VP Bill Crossen, (Caucasian male) sent Plaintiff an email stating that Plaintiff was not selected for

the Finance Director position. Plaintiff responded to Mr. Crossen by requesting to speak with Mr. Crossen about the strengths of the chosen candidate and inquiring if there were any African-American employees in higher level management positions within the FPA Department.

54. A mere three days later, on February 24, 2017, Defendant George, Mr. Brock and a Human Resources representative informed Plaintiff that he was being terminated, ostensibly for a $7.2 million discrepancy in an account Plaintiff reconciled (capitation issue), lack of communication with staff, and failure to fulfill his role.

55. The reasons provided for Plaintiff's termination were pretext for discrimination and retaliation. Plaintiff was terminated for having asserted his rights to oppose what he perceived as race discrimination and retaliation.

56. The discrepancy referenced at the time of Plaintiff's termination had been referenced in his 2016 mid-year review, had been acknowledged as not having been created or caused by Plaintiff, and not belonging in the account Plaintiff reconciled. Plaintiff was not warned in any way whatsoever that his job was in jeopardy due to an error made by someone else.

57. To the contrary, Plaintiff's 2016 mid-year review stated that "Michael's overall work product is very good, I appreciate the dedication and SME understanding that Michael brings to the MPP/RA process;" "Michael is

proactive to keep monthly, quarterly and yearly deadlines and deliverables consistently;" and "Michael does a good job working with and communicating with our partner teams and guiding the overall progress of the department."

58. Plaintiff was the only person terminated as a result of the capitation issue, even though several individuals played a far more significant role in the error and at least one of them admitted their mistake on two separate occasions.

59. In violation of Defendants' progressive discipline policy, Plaintiff was not given a written warning or placed on a Performance Improvement Plan ("PIP") or otherwise put on notice of job performance issues prior to termination.

60. Similarly situated Caucasian employees accused of poor performance have been placed on a PIP or subjected to written disciplinary action prior to termination and given the opportunity to correct any perceived deficiency.

61. Similarly situated Caucasian employees, have actually committed egregious accounting errors and were not terminated.

62. Plaintiff's termination was the ultimate act of retaliation by Defendants, but they were not the only acts of retaliation to which he was subjected by Defendants.

## COUNT I

### TITLE VII - RACE DISCRIMINATION AGAINST DEFENDANT ANTHEM

63. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1 through 62 of this Complaint.

64. Defendant Anthem's actions in subjecting Plaintiff to different terms and conditions of employment and in failing to promote Plaintiff to open positions for which he was the most qualified individual, and in terminating Plaintiff on account of his race and national origin, constitutes unlawful intentional discrimination in violation of Title VII.

65. Defendant Anthem acted with malice and reckless indifference to Plaintiff's federally protected rights.

66. As a result of the unlawful actions of Defendant Anthem, Plaintiff has suffered loss of income and employment benefits, as well as emotional pain, suffering, mental anguish and other non-pecuniary losses.

## COUNT II

### TITLE VII – RETALIATION AGAINST DEFENDANT ANTHEM

67. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1 through 66 of this Complaint.

68. Defendant Anthem's actions in excessively scrutinizing his work performance, refusing to promote him and terminating his employment on

account of his complaints of race and national origin discrimination internally with Anthem and with the EEOC constitute unlawful retaliation in violation of Title VII.

69.   Defendant Anthem acted with malice and reckless indifference to Plaintiff's federally protected rights.

70.   As a result of the unlawful actions of Defendant Anthem, Plaintiff has suffered loss of income and employment benefits, as well as emotional pain, suffering, mental anguish and other non-pecuniary losses.

## COUNT III

### SECTION 1981 - RACE DISCRIMINATION

71.   Plaintiff hereby incorporates as if set forth fully herein paragraphs 1 through 70 of this Complaint.

72.   Defendants' actions in subjecting Plaintiff to different terms and conditions of employment and in failing to promote Plaintiff to open positions for which he was the most qualified individual, and for terminating his employment on account of his race and national origin, constitute unlawful intentional discrimination in violation of Section 1981 of the Civil Rights Act of 1866.

73.   Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

74. As a result of the unlawful actions of Defendants, Plaintiff has suffered loss of income and employment benefits, as well as emotional pain, suffering, mental anguish and other non-pecuniary losses.

## COUNT IV

### SECTION 1981 - RETALIATION

75. Plaintiff hereby incorporates as if set forth fully herein paragraphs 1 through 74 of this Complaint.

76. Defendant's actions in excessively scrutinizing Plaintiff's work performance, refusing to promote him and terminating his employment on account of his complaints of race and national origin discrimination internally with Anthem and with the EEOC constitute unlawful retaliation in violation of Section 1981 of the Civil Rights Act of 1866.

77. Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights.

78. As a result of the unlawful actions of Defendants, Plaintiff has suffered loss of income and employment benefits, as well as emotional pain, suffering, mental anguish and other non-pecuniary losses.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and judgment as follows:

a) adjudging Defendants to have engaged in unlawful employment practices in violation of Title VII and Section 1981;

b) enjoining Defendants from engaging in unlawful employment practices in violation of Title VII and Section 1981;

c) reinstating Plaintiff to his employment with Anthem and ordering that Plaintiff be promoted to a Level E-14 or M-14 position as a Director or Senior Manager in the FAR or FPA Department or in the alternative, awarding Plaintiff front pay and benefits;

d) awarding Plaintiff lost pay and benefits arising from each promotion he was denied;

e) awarding Plaintiff lost pay and benefits arising from the termination of his employment;

f) awarding Plaintiff compensatory damages for violations of his statutory rights under Title VII and Section 1981, in an amount to be determined by the enlightened conscience of the jury, including damages for emotional distress and humiliation;

g) awarding Plaintiff punitive damages for the unlawful intentional discrimination and retaliation against him in violation of Title VII and Section 1981;

h) awarding Plaintiff pre- and post-judgment interest;

i) awarding Plaintiff his costs, expenses of litigation and reasonable attorneys' fees; and

j) awarding Plaintiff all other relief to which he is entitled.

Respectfully submitted, this 22nd day of May, 2017.

>*/s/Charlotte J. Redo*
> Charlotte J. Redo
> Georgia Bar No. 60457
>
> */s/James E. Rollins, Jr.*
> James E. Rollins, Jr.
> Georgia Bar No. 613825

SCHWARTZ ROLLINS, LLC
945 E. Paces Ferry Road, Suite 2270
Atlanta, GA 30326
404-844-4133 (telephone)
404-844-4135 (facsimile)
cjr@gaemploymentlawyers.com
jer@gaemploymentlawyers.com